## CHILD LABOR TAX CASE.[1]

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF NORTH CAROLINA.

No. 657. Argued March 7, 8, 1922.—Decided May 15, 1922.

act of Congress which clearly, on its face, is designed to penalize, and thereby to discourage or suppress, conduct the regulation of which is reserved by the Constitution exclusively to the States, can not be sustained under the federal taxing power by calling the penalty a tax. P. 37. *Veazie Bank* v. *Fenno,* 8 Wall. 533; *McCray* v. *United States,* 195 U. S. 27; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; and *United States* v. *Doremus,* 249 U. S. 86, distinguished.

---

[1] The docket title of this case is *J. W. Bailey and J. W. Bailey, Collector of Internal Revenue for the District of North Carolina,* v. *Drexel Furniture Company.*

2. Title XII of the Revenue Act of February 24, 1919, c. 18, 40
Stat. 1138, entitled "Tax on Employment of Child Labor," pro-
vides that any person operating (a) any mine or quarry in which
children under the age of sixteen years have been employed or
permitted to work during any portion of the taxable year, or (b)
any mill, cannery, workshop or factory in which children under
the age of fourteen years have been employed or permitted to
work, or children between the ages of fourteen and sixteen have
been employed or permitted to work more than eight hours in
any day, or more than six days in any week, or after 7 o'clock
P. M. or before 6 o'clock A. M., during any portion of the taxable
year, shall pay for such taxable year an excise equivalent to ten
per cent. of the entire net profits received or accrued for such
year from the sale or disposition of the product of his mine or
other establishment; but relieves from liability one who employs
a child believing him to be above the specified ages, relying on a
certificate issued under authority of a board consisting of the
Secretary of the Treasury, the Commissioner of Internal Revenue
and the Secretary of Labor, or under the laws of a State designated
by them. Provision is made for inspection of the mines, etc., by
or under authority of the Commissioner of Internal Revenue, or by
or under authority of the Secretary of Labor upon request of the
Commissioner, and obstruction of such inspections is made pun-
ishable by fine and imprisonment. *Held* unconstitutional. P. 34.
276 Fed. 452, affirmed.

ERROR to a judgment of the District Court for the
plaintiff in an action against an internal revenue collector
to recover the amount of a tax previously paid under
protest.

*Mr. Solicitor General Beck,* with whom *Mr. Robert P.
Reeder,* Special Assistant to the Attorney General, was
on the brief, for plaintiff in error.

I. Congress has described this as a tax, and whether
constitutional or otherwise by reason of its incidences, it
is nevertheless an excise tax. It may not be easy to draw
a line of demarcation between a penalty and a tax, but
the line of demarcation seems to be that, where the stat-
ute prohibits the doing of an act and as a sanction im-
poses a pecuniary punishment for violating the act, then

it is a penalty, and not a tax at all; but, where the thing done is not prohibited, but, with respect to the privilege of doing it, an excise tax is imposed, it is none the less a tax, even though it be, in its practical results, prohibitive.

The Child Labor Law does not pretend to, and does not in fact, prohibit the employment of child labor. If a manufacturer desires to employ such labor, he is free to do so; but, if he does so, he must pay an excise tax for the privilege. Where the excise tax is prohibitive in amount, there may be little practical difference between such an excise tax and a penal prohibition; but, theoretically, they are different exercises of governmental power.

II. *Hammer* v. *Dagenhart*, 247 U. S. 251, does not rule this case. While the federal commercial power only relates to interstate and foreign commerce, the taxing power comprehends all taxable objects, whether interstate or intrastate.

The *License Tax Cases,* 5 Wall. 462, are analogous to the present case. The court there conceded that " Congress has no power of regulation nor any direct control " over the domestic trade of a State, " except such as is strictly incidental to the exercise of powers clearly granted to the legislature," 5 Wall. 470, 471; but nevertheless sustained the power to impose an excise upon the sale of liquor wherever the sale was permitted.

So, also, the question whether child labor may be employed or not is a matter for the determination of the States. But the tax law in the instant case does not regulate the internal affairs of the States any more than did the taxing statute sustained in the *License Tax Cases.* It does not prohibit child labor. It merely requires the manufacturer who employs child labor to pay a tax not imposed upon one who does not employ child labor. Certainly Congress may select the subjects of taxation.

III. Subject only to limitations named in the Constitution, the power of Congress to tax may be exercised at discretion.

" The power of Congress to tax is a very extensive power. It is given in the Constitution, with only one exception and only two qualifications. Congress cannot tax exports, and it must impose direct taxes by the rule of apportionment and indirect taxes by the rule of uniformity. Thus limited, and thus only, it reaches every subject, and may be exercised at discretion." *License Tax Cases,* 5 Wall. 462, 471. The court has repeatedly taken the same position in other cases. *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 153, 154; *United States* v. *Doremus,* 249 U. S. 86, 93, 94;. *Nicol* v. *Ames,* 173 U. S. 509, 519; *McCray* v. *United States,* 195 U. S. 27, 57–62.

While the Federal Government may not tax the governmental agencies of the States, it may tax the nongovernmental activities of the people of the States. *Veazie Bank* v. *Fenno,* 8 Wall. 533; *Choctaw, O. & G. R. R. Co.* v. *Mackey,* 256 U. S. 531, 536, 537; *South Carolina* v. *United States,* 199 U. S. 437.

When a State adopts a law the necessary effect of which is to exercise a power granted by the Constitution to the Federal Government, it must follow that the act is void. But, as pointed out in *McCray v. United States,* 195 U. S. 27, 60, this is due to the paramount nature of the Constitution. Under Art. VI, where there is any conflict between state and federal activity, the Federal Government is supreme. Where Congress in exerting its power to levy taxes deals with a subject which might also be regulated by the police power of the State, the federal statute is not nullified by any power which the State might otherwise possess.

IV. The power to lay taxes is not limited to the raising of revenue. Story, Const., § 973. See also § 965.

Taxes have rarely, if ever, been levied solely with reference to fiscal necessities. From time out of mind the

body that imposed taxes has considered all the varying influences upon the public welfare that such a levy would incidentally entail, and frequently the social, economic or moral effect of the tax is a far more influential considera- tion with the legislature than the mere question of reve- nue. It has always been true that in levying taxes Con- gress has taken into consideration matters that are be- yond the scope of federal authority. From the begin- ning, import duties, and at times internal taxes, have been levied in order to accomplish ends, sometimes moral and sometimes economic, which were in themselves not within the scope of federal power.

Thus, when liquor was a permissible commodity, it was always recognized that to impose heavy excise taxes upon its sale accomplished a moral purpose, and yet, until the Eighteenth Amendment, the morality of drinking was not a question with which the Federal Government had any concern.

And, in *McCray v. United States,* 195 U. S. 27, where it may be supposed that Congress had sought to attain an economic end by means of a taxing statute, this court refused to declare the legislation unconstitutional.

Well-known examples of the use of the taxing power in connection with social or economic ends are the pro- tective tariff system; the tax on foreign-built yachts, *Billings* v. *United States,* 232 U. S. 261; on notes of state banks, *Veazie Bank* v. *Fenno,* 8 Wall. 533; on importation of alien passengers, *Head Money Cases,* 112 U. S. 580; graduation of taxes, *Magoun* v. *Bank,* 170 U. S. 283; *Knowlton* v. *Moore,* 178 U. S. 41; *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1; on oleomargarine, *In re Kol- lock,* 165 U. S. 526; *McCray* v. *United States,* 195 U. S. 27; on sugar refiners, *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89. Well-known uses of the power in connection with moral ends are taxes on dealers in liquors and lottery tickets, *License Tax Cases,* 5 Wall.

462; on dealers in narcotic drugs, *United States* v. *Doremus,* 249 U. S. 86.

V. The motive of Congress is immaterial. *Veazie Bank* v. *Fenno,* 8 Wall. 533, 548; *Chinese Exclusion Case,* 130 U. S. 581, 602, 603; *McCray* v. *United States,* 195 U. S. 27, 54, 56; *Smith* v. *Kansas City Title & Trust Co.,* 255 U. S. 180.

This court is powerless to say judicially that the motive of Congress in levying the tax under consideration was not to impose a tax, but to regulate child labor. Moreover, if, in levying the tax upon manufacturers that employ child labor, Congress did so with a recognition that such a tax might result in no revenue at all, and virtually prohibit the employment of child labor, such purpose, while it may be politically anti-constitutional, in the sense that it may indirectly and incidentally regulate a matter otherwise within the discretion of the States, yet it is not juridically unconstitutional, because it is an exercise of an undoubted power to impose a tax; and the motives and objectives of the tax are within that broad field of political discretion into which the judiciary is powerless to enter. To use Madison's phrase, it is an "extra-judicial" question and as such beyond the power of the court.

Such an excise is not expressly prohibited, and, as it does raise revenue, if a manufacturer exercises his undoubted right to employ child labor, it, in the language of Chief Justice Marshall in *McCulloch* v. *Maryland,* 4 Wheat. 316, 423, "is really calculated to effect any [one] of the objects intrusted to the Government." Certainly such a case falls expressly within the doctrine announced in *McCray* v. *United States, supra,* that this court will not restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted.

We do not concede that no fiscal reason can be assigned which justifies the Child Labor Law as a revenue meas-

ure. It is notorious that child labor is cheap labor, and this being so, Congress may have considered this privilege of cheaper production as a fiscal reason for the tax.

However, if this court is empowered to consider the motive of Congress, then the contention that the dominant motive was to make the employment of child labor expensive by reason of added taxation is not unreasonable.

If so, it is not the first time in the history of taxation that taxes have been imposed for other than fiscal purposes. The question is, not what the motive of Congress is, but does this statute impose an excise tax; and, if so, whether the imposition of such a tax has been forbidden by the Constitution?

Certainly by no express prohibition, and it remains to inquire whether it is by an implied prohibition.

The doctrine of implied powers is a natural and necessary one; but the doctrine of implied limitations is one for which there is little countenance in either the text of the Constitution or its judicial interpretation.

Few, if any implied limitations upon expressly delegated powers have ever had the sanction of this court. The greatest of all was that which was recognized in *McCulloch* v. *Maryland*, and it is the only implied limitation upon the taxing power, and it was decided from an obvious and imperative necessity, for neither the Federal Government nor the constituent States could possibly continue to exist·if·either had the power to tax the agencies of the other out of existence.

With this exception, however, this court has said repeatedly that the power to tax is only restricted by the express prohibitions of the Constitution, and none can be implied where, as in the instant case, they depend upon a question of fact, viz, the motive for the exercise of the delegated power.

VI. In considering this question of invalidating the exercise of a delegated power by reason of its assumed

motives or objectives, a distinction should be made between the following classes of cases:

(a) Where the exercise of a federal power has an unquestioned but incidental effect upon some right reserved to the States. In this case obviously the federal statute can not be invalidated. Few laws could be passed, either by State or Nation, that would not have a reflex action.

(b) Instances where it is clear that Congress in passing a federal statute not only has a legitimate federal purpose but may also have been actuated by some motive beyond the province of the Federal Government. In this case, there is also no power to invalidate a federal statute. This court could not, even if it would, weigh different motives.

(c) Cases where, from the history of the legislation, there is reason to believe that the power was exercised, not to accomplish some purpose intrusted to the Federal Government by the Constitution, but wholly to accomplish by indirect action some purpose which was not within its scope. Here, too, this court can not invalidate a statute, because, however plausible the inference may be in a given case of an ulterior and unconstitutional motive, it can not judge the motive and object of Congress, either by declarations in debate or even by the history of the legislation. The good faith of Congress in passing the law must be assumed.

(d) Cases in which this court can indubitably deduce *from the language of the act* that the exercise of the power was not to accomplish *any* purpose intrusted to the Federal Government, but rather some purpose beyond the scope of federal power. Here, if in any case, this court may nullify the law. Such a case was *Hammer* v. *Dagenhart, supra.*

*Can such a case arise in a taxing statute?* Can it be safely adjudged that Congress did not intend to impose a tax, when it expressly says that it does? In *McCray* v.

*United States, supra,* this court answered this question in the negative.

In the instant case it may be that Congress intended incidentally to regulate child labor by the exercise of its taxing power, but this is one of the cases where Congress, having lawfully chosen the subjects for taxation, its exercise of an undoubted power cannot be challenged, because such tax may have an incidental effect upon some reserved rights of the States. If this were not so, many federal taxes would be assailed, because it has always been true that in levying taxes Congress has taken into consideration matters that are beyond the scope of federal regulation.

*Mr. William P. Bynum,* with whom *Mr. Jno. N. Wilson, Mr. Clement Manly, Mr. W. M. Hendren* and *Mr. Junius Parker* were on the brief, for defendant in error.

That this statute is unconstitutional is determined by the decision in *Hammer* v. *Dagenhart,* 247 U. S. 251, declaring the Child Labor Law of 1916 unconstitutional.

Notwithstanding this solemn decision by this court, Congress in its enactment of the Federal Revenue Act of 1918, the consideration of which began soon after the decision in *Hammer* v. *Dagenhart,* prescribed precisely the same minimum ages and the same working hours which it had prescribed in the statute of 1916, and provided that the employer operating a mine, quarry, mill, cannery or factory, who saw fit to disregard the will of Congress in his employment of children, should, instead of having his goods shut out of interstate commerce, as the statute of 1916 had provided, be subjected to a so-called tax of ten per cent on all the profits of his business additional to all other taxes.

It needs no reference to the debates to ascertain the purpose of Congress in this enactment, and the direct effect of such enactment—if it is to have validity and

effect at all. If recourse to the debates were necessary or desirable, it shows the frankest and clearest expression of the congressional will and purpose.

It does not consist with the dignity that should characterize arguments in this court to discuss, as if it were an uncertain thing, the purpose and effect of this statute. Of course, it is not a revenue statute, and of course it is an attempt to impose upon all the citizens in all the States the congressional will as to their conduct in the operation of their manufacturing, mining and quarrying enterprises.

The statute is condemned by the principles announced by this court in numerous cases, including cases in which taxing statutes have been upheld. *McCulloch* v. *Maryland,* 4 Wheat. 316, 423; *Veazie Bank* v. *Fenno,* 8 Wall. 533, 548; *United States* v. *Doremus,* 249 U. S. 86, 93; Cooley on Taxation, 3d ed., 82.

If sustained as a tax, it must be as a privilege tax, and yet it does not purport to bear any relation in amount to the extent that the privilege is enjoyed. It is not a tax on the products of child labor, but it is a tax on the employing of children under circumstances not approved by Congress, and the amount to be paid for disobedience to the will of Congress is arrived at precisely as the criminal judge arrives at the fine to be paid by a convicted criminal. So this statute imposes a tax of ten per cent on the total profits, whether from the employment of children or the employment of adults—whether from the investment of large capital, or skill or good fortune in management—that the offending employer has made during the year.

The employment of children, under conditions and circumstances condemned by the competent legislative authority, has never in the history of the world been treated as a privilege, but has always been treated as a crime. Whatever may be said as to the hours and cir-

cumstances of employment of adults, no one for many years has doubted that the regulation of minimum ages for children's employment, and maximum hours for a child's day labor, is within the police power of the States.

This statute is a criminal statute, under the general title "A Bill to Raise Revenue." It is an attempt to make regulations, in accordance with congressional wishes, and applicable to the whole country, in a matter so influenced by local surroundings as to be properly regulated only by local legislatures.

It is not true that the taxing power of Congress is limited only by the limitations expressly stated by the Constitution to be applicable to the power to tax, to-wit, that exports may not be taxed, and that direct taxes must be apportioned, and excise taxes uniform. This court has expressly and repeatedly recognized other limitations. *Evans* v. *Gore,* 253 U. S. 245; *Collector* v. *Day,* 11 Wall. 113; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 585, 601, 652, 653; *United States* v. *Railroad Co.,* 17 Wall. 322.

Considering the sovereign powers of the Federal Government and of the States respectively in their several spheres, this court has condemned this statute in principle in its condemnation of certain taxing statutes of the States. *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, 37; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135.

It is the Constitution and the federal statutes enacted in accordance therewith that constitute the supreme law of the land, and federal statutes enacted otherwise are not only not the supreme law of the land but not law at all. Under our Constitution the Nation and the States are not to be weighed in the balance to ascertain any general supremacy—the Nation is supreme in the exercise of the powers delegated to it, and the States are supreme in the exercise of the powers reserved to them. *Collector* v. *Day, supra.*

The attributes of sovereignty that belong to the States in matter of taxation have been declared by this court in numerous cases to be of the kind, character and quality that belong to the Federal Government. *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 160.

The power of Congress is " to lay and collect taxes, duties, imposts and excises," and there is no expressly given power to provide, under color of a tax law, for the " general welfare of the United States."

The fact that protective tariffs have been levied and have always been assumed to be valid is in no way controlling or influential in the present case. It is frequently suggested that this analogy requires the courts to sustain any tax imposed in the ostensible exercise of the taxing power, even though it is plainly apparent that revenue is not sought. This, though, leaves out of consideration the fact that Congress does have the undoubted power to exclude importations altogether, and since the greater includes the less, it must have the power to place such conditions upon the importations as it sees fit.

The decisions of this court that sustain revenue acts of Congress which incidentally affect conduct directly to be regulated only by the States, do not constitute authorities for sustaining this statute.

Congress could not possibly levy internal excise taxes, whether collected by stamps or otherwise, without some incidental interference with the conduct of citizens in those fields which are directly regulatable only by the States. *License Tax Cases,* 5 Wall. 462; *Nicol* v. *Ames,* 173 U. S. 509; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Knowlton* v. *Moore,* 178 U. S. 41; *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397; *Springer* v. *United States,* 102 U. S. 586.

*Veazie Bank* v. *Fenno,* 8 Wall. 533; *United States* v. *Doremus,* 249 U. S. 86; and *McCray* v. *United States,*

195 U. S. 27, are distinguishable from the case at bar, and are not authorities for holding this statute constitutional.

The decision in the *Veazie Bank Case*—as distinguished from some of the unnecessary words of the Chief Justice—is authority only for the proposition, not here contested, that, where the power to regulate exists, the court will not deny the validity of any statute that accomplishes such regulation.

This is a Federal Government with a written constitution, and if any statute, federal or state, is not in accordance with that written constitution, it is the duty of this court to declare such statute void. *Fairbank* v. *United States*, 181 U. S. 283, 285.

This is a federated government—"an indissoluble union of indestructible States"—and no state legislation is valid that encroaches upon the powers delegated to the union, and no federal legislation is valid that encroaches upon the powers reserved to the States. Inevitably the efficient exercise of a federal power may incidentally diminish, or otherwise affect, a state power; but if the encroachment be direct, and not incidental, then the federal statute is void. *Hammer* v. *Dagenhart, supra,* 275; *Lane County* v. *Oregon,* 7 Wall. 71, 76; *Fairbank* v. *United States,* 181 U. S. 283, 289.

The enforcement of the constitutional limitations on the legislative powers of Congress or the States, resolves itself always into a practical matter. It is quite impossible, by precise legal formula, to limit the extent of the police power of the States as opposed to the limitation of the Fourteenth Amendment; or to define the limitations on the power of Congress prescribed by the due process clause; or to separate the proper functions of State and Nation. After all is said and done, there remains the question of practical effect, and there must be a point, the location of which depends to some extent on the qualities and characteristics of statesmanship of the members

of the court, where the court must say " Thus far and no farther."

·The maxim of our law, first enunciated by Marshall, that the power to tax is the power to destroy, is not an admonition to the courts to assume that every tax law passed by the sovereign power is valid; but it is an admonition to scrutinize carefully whether the power exists, because of the realization that, if it exists, it may be used to the extent of destruction. *Knowlton* v. *Moore,* 178 U. S. 41, 60.

Even this court may not declare a congressional enactment void because it is in the judgment of members of the court unwise; there must be " juridical unconstitutionality," and not simply "political anti-constitutionality," to warrant the court holding a statute passed by Congress unconstitutional and void. This does not mean, though, that this court must demonstrate the constitutionality or unconstitutionality of a statute by the application of a legalistic formula or distinction, such as might be very useful in disposing of the ordinary legal question. It does not mean, either, that this court is to shut its eyes to every tendency of the times, or to every consideration of the effect on our institutions of the decision that it is called upon to make. The decisions of this court announced by John Marshall stopped the tendency toward magnification of the individual States, and if that tendency had not been stopped the Nation would have been impotent. The present tendency is in the other direction, and the Federal Government is overloaded, while the States are being left to function hardly at all.

The question before this court in this case, is, Whether a resort to the commerce clause of the Constitution having failed, Congress may, by a resort to the tax clause of the same instrument, control the entire police power of the States, and so open the door to the complete nationalization of our Government, so ardently desired by some of the publicists of our day.

MR. CHIEF JUSTICE TAFT delivered the opinion of the court.

This case presents the question of the constitutional validity of the Child Labor Tax Law. The plaintiff below, the Drexel Furniture Company, is engaged in the manufacture of furniture in the Western District of North Carolina. On September 20, 1921, it received a notice from Bailey, United States Collector of Internal Revenue for the District, that it had been assessed $6,312.79 for having during the taxable year 1919 employed and permitted to work in its factory a boy under fourteen years of age, thus incurring the tax of ten per cent. on its net profits for that year. The Company paid the tax under protest, and after rejection of its claim for a refund, brought this suit. On demurrer to an amended complaint, judgment was entered for the Company against the Collector for the full amount with interest. The writ of error is prosecuted by the Collector direct from the District Court under § 238 of the Judicial Code.

The Child Labor Tax Law is Title XII of an act entitled "An Act To provide revenue, and for other purposes", approved February 24, 1919, c. 18, 40 Stat. 1057, 1138. The heading of the title is "Tax on Employment of Child Labor". It begins with § 1200 and includes eight sections. Section 1200 is as follows:

"SEC. 1200. That every person (other than a bona fide boys' or girls' canning club recognized by the Agricultural Department of a State and of the United States) operating (a) any mine or quarry situated in the United States in which children under the age of sixteen years have been employed or permitted to work during any portion of the taxable year; or (b) any mill, cannery, workshop, factory, or manufacturing establishment situated in the United States in which children under the age of fourteen years have been employed or permitted to

work, or children between the ages of fourteen and sixteen have been employed or permitted to work more than eight hours in any day or more than six days in any week, or after the hour of seven o'clock post meridian, or before the hour of six o'clock ante meridian, during any portion of the taxable year, shall pay for each taxable year, in addition to all other taxes imposed by law, an excise tax equivalent to 10 per centum of the entire net profits received or accrued for such year from the sale or disposition of the product of such mine, quarry, mill, cannery, workshop, factory, or manufacturing establishment."

Section 1203 relieves from liability to the tax any one who employs a child, believing him to be of proper age, relying on a certificate to this effect issued by persons prescribed by a Board consisting of the Secretary of the Treasury, the Commissioner of Internal Revenue and the Secretary of Labor, or issued by state authorities. The section also provides in paragraph (b) that "the tax imposed by this title shall not be imposed in the case of any person who proves to the satisfaction of the Secretary that the only employment or permission to work which but for this section would subject him to the tax, has been of a child employed or permitted to work under a mistake of fact as to the age of such child, and without intention to evade the tax."

Section 1206 gives authority to the Commissioner of Internal Revenue, or any other person authorized by him, "to enter and inspect at any time any mine, quarry, mill, cannery, workshop, factory, or manufacturing establishment." The Secretary of Labor, or any person whom he authorizes, is given like authority in order to comply with a request of the Commissioner to make such inspection and report the same. Any person who refuses entry or obstructs inspection is made subject to fine or imprisonment or both.

The law is attacked on the ground that it is a regulation of the employment of child labor in the States—an exclusively state function under the Federal Constitution and within the reservations of the Tenth Amendment. It is defended on the ground that it is a mere excise tax levied by the Congress of the United States under its broad power of taxation conferred by § 8, Article I, of the Federal Constitution. We must construe the law and interpret the intent and meaning of Congress from the language of the act. The words are to be given their ordinary meaning unless the context shows that they are differently used. Does this law impose a tax with only that incidental restraint and regulation which a tax must inevitably involve? Or does it regulate by the use of the so-called tax as a penalty? If a tax, it is clearly an excise. If it were an excise on a commodity or other thing of value we might not be permitted under previous decisions of this court to infer solely from its heavy burden that the act intends a prohibition instead of a tax. But this act is more. It provides a heavy exaction for a departure from a detailed and specified course of conduct in business. That course of business is that employers shall employ in mines and quarries, children of an age greater than sixteen years; in mills and factories, children of an age greater than fourteen years, and shall prevent children of less than sixteen years in mills and factories from working more than eight hours a day or six days in the week. If an employer departs from this prescribed course of business, he is to pay to the Government one-tenth of his entire net income in the business for a full year. The amount is not to be proportioned in any degree to the extent or frequency of the departures, but is to be paid by the employer in full measure whether he employs five hundred children for a year, or employs only one for a day. Moreover, if he does not know the child is within the named age limit, he is not to pay;

that is to say, it is only where he knowingly departs from the prescribed course that payment is to be exacted. Scienter is associated with penalties not with taxes. The employer's factory is to be subject to inspection at any time not only by the taxing officers of the Treasury, the Department normally charged with the collection of taxes, but also by the Secretary of Labor and his subordinates whose normal function is the advancement and protection of the welfare of the workers. In the light of these features of the act, a court must be blind not to see that the so-called tax is imposed to stop the employment of children within the age limits prescribed. Its prohibitory and regulatory effect and purpose are palpable. All others can see and understand this. How can we properly shut our minds to it?

It is the high duty and function of this court in cases regularly brought to its bar to decline to recognize or enforce seeming laws of Congress, dealing with subjects not entrusted to Congress but left or committed by the supreme law of the land to the control of the States. We can not avoid the duty even though it require us to refuse to give effect to legislation designed to promote the highest good. The good sought in unconstitutional legislation is an insidious feature because it leads citizens and legislators of good purpose to promote it without thought of the serious breach it will make in the ark of our covenant or the harm which will come from breaking down recognized standards. In the maintenance of local self government, on the one hand, and the national power, on the other, our country has been able to endure and prosper for near a century and a half.

Out of a proper respect for the acts of a coördinate branch of the Government, this court has gone far to sustain taxing acts as such, even though there has been ground for suspecting from the weight of the tax it was intended to destroy its subject. But, in the act before

us, the presumption of validity cannot prevail, because the proof of the contrary is found on the very face of its provisions. Grant the validity of this law, and all that Congress would need to do, hereafter, in seeking to take over to its control any one of the great number of subjects of public interest, jurisdiction of which the States have never parted with, and which are reserved to them by the Tenth Amendment, would be to enact a detailed measure of complete regulation of the subject and enforce it by a so-called tax upon departures from it. To give such magic to the word " tax " would be to break down all constitutional limitation of the powers of Congress and completely wipe out the sovereignty of the States.

The difference between a tax and a penalty is sometimes difficult to define and yet the consequences of the distinction in the required method of their collection often are important. Where the sovereign enacting the law has power to impose both tax and penalty the difference between revenue production and mere regulation may be immaterial, but not so when one sovereign can impose a tax only, and the power of regulation rests in another. Taxes are occasionally imposed in the discretion of the legislature on proper subjects with the primary motive of obtaining revenue from them and with the incidental motive of discouraging them by making their continuance onerous. They do not lose their character as taxes because of the incidental motive. But there comes a time in the extension of the penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment. Such is the case in the law before us. Although Congress does not invalidate the contract of employment or expressly declare that the employment within the mentioned ages is illegal, it does exhibit its intent practically to achieve the latter result by adopting the criteria of wrongdoing and imposing its principal consequence on those who transgress its standard.

The case before us can not be distinguished from that of *Hammer* v. *Dagenhart*, 247 U. S. 251. Congress there enacted a law to prohibit transportation in interstate commerce of goods made at a factory in which there was employment of children within the same ages and for the same number of hours a day and days in a week as are penalized by the act in this case. This court held the law in that case to be void. It said:

" In our view the necessary effect of this act is, by means of a prohibition against the movement in interstate commerce of ordinary commercial commodities, to regulate the hours of labor of children in factories and mines within the States, a purely state authority."

In the case at the bar, Congress in the name of a tax which on the face of the act is a penalty seeks to do the same thing, and the effort must be equally futile.

The analogy of the *Dagenhart Case* is clear. The congressional power over interstate commerce is, within its proper scope, just as complete and unlimited as the congressional power to tax, and the legislative motive in its exercise is just as free from judicial suspicion and inquiry. Yet when Congress threatened to stop interstate commerce in ordinary and necessary commodities, unobjectionable as subjects of transportation, and to deny the same to the people of a State in order to coerce them into compliance with Congress's regulation of state concerns, the court said this was not in fact regulation of interstate commerce, but rather that of State concerns and was invalid. So here the so-called tax is a penalty to coerce people of a State to act as Congress wishes them to act in respect of a matter completely the business of the state government under the Federal Constitution. This case requires as did the *Dagenhart Case* the application of the principle announced by Chief Justice Marshall in *McCulloch* v. *Maryland*, 4 Wheat. 316, 423, in a much quoted passage:

" Should Congress, in the execution of its powers, adopt measures which are prohibited by the Constitution; or should Congress, under the pretext of executing its powers, pass laws for the accomplishment of objects not intrusted to the government; it would become the painful duty of this tribunal, should a case requiring such a decision come before it, to say, that such an act was not the law of the land."

But it is pressed upon us that this court has gone so far in sustaining taxing measures the effect or tendency of which was to accomplish purposes not directly within congressional power that we are bound by authority to maintain this law.

The first of these is *Veazie Bank* v. *Fenno*, 8 Wall. 533. In that case, the validity of a law which increased a tax on the circulating notes of persons and state banks from one per centum to ten per centum was in question. The main question was whether this was a direct tax to be apportioned among the several States " according to their respective numbers." This was answered in the negative. The second objection was stated by the court:

" It is insisted, however, that the tax in the case before us is excessive, and so excessive as to indicate a purpose on the part of Congress to destroy the franchise of the bank, and is, therefore, beyond the constitutional power of Congress."

To this the court answered (p. 548):

" The first answer to this is that the judicial cannot prescribe to the legislative departments of the government limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected. So if a particular tax bears heavily upon a corporation, or a class of corporations, it cannot, for that reason only, be pronounced contrary to the Constitution."

It will be observed that the sole objection to the tax there was its excessive character. Nothing else appeared on the face of the act. It was an increase of a tax admittedly legal to a higher rate and that was all. There were no elaborate specifications on the face of the act, as here, indicating the purpose to regulate matters of state concern and jurisdiction through an exaction so applied as to give it the qualities of a penalty for violation of law rather than a tax.

It should be noted, too, that the court, speaking of the extent of the taxing power, used these cautionary words (p. 541):

" There are, indeed, certain virtual limitations, arising from the principles of the Constitution itself. It would undoubtedly be an abuse of the power if so exercised as to impair the separate existence and independent self-government of the States, or if exercised for ends inconsistent with the limited grants of power in the Constitution."

But more than this, what was charged to be the object of the excessive tax was within the congressional authority, as appears from the second answer which the court gave to the objection. After having pointed out the legitimate means taken by Congress to secure a national medium or currency, the court said (p. 549):

" Having thus, in the exercise of undisputed constitutional powers, undertaken to provide a currency for the whole country, it cannot be questioned that Congress may, constitutionally, secure the benefit of it to the people by appropriate legislation. To this end, Congress has denied the quality of legal tender to foreign coins, and has provided by law against the imposition of counterfeit and base coin on the community. To the same end, Congress may restrain, by suitable enactments, the circulation as money of any notes not issued under its own authority. Without this power, indeed, its attempts to se-

cure a sound and uniform currency for the country must be futile."

The next case is that of *McCray* v. *United States*, 195 U. S. 27. That, like the *Veazie Bank Case*, was the increase of an excise tax upon a subject properly taxable in which the taxpayers claimed that the tax had become invalid because the increase was excessive. It was a tax on oleomargarine, a substitute for butter. The tax on the white oleomargarine was one-quarter of a cent a pound, and on the yellow oleomargarine was first two cents and was then by the act in question increased to ten cents per pound. This court held that the discretion of Congress in the exercise of its constitutional powers to levy excise taxes could not be controlled or limited by the courts because the latter might deem the incidence of the tax oppressive or even destructive. It was the same principle as that applied in the *Veazie Bank Case*. This was that Congress in selecting its subjects for taxation might impose the burden where and as it would and that a motive disclosed in its selection to discourage sale or manufacture of an article by a higher tax than on some other did not invalidate the tax. In neither of these cases did the law objected to show on its face as does the law before us the detailed specifications of a regulation of a state concern and business with a heavy exaction to promote the efficacy of such regulation.

The third case is that of *Flint* v. *Stone Tracy Co.*, 220 U. S. 107. It involved the validity of an excise tax levied on the doing of business by all corporations, joint stock companies, associations organized for profit having a capital stock represented by shares, and insurance companies, and measured the excise by the net income of the corporations. There was not in that case the slightest doubt that the tax was a tax, and a tax for revenue, but it was attacked on the ground that such a tax could be made excessive and thus used by Congress to destroy the exist-

ence of state corporations. To this, this court gave the same answer as in the *Veazie Bank* and *McCray Cases.* It is not so strong an authority for the Government's contention as they are.

The fourth case is *United States* v. *Doremus,* 249 U. S. 86. That involved the validity of the Narcotic Drug Act, 38 Stat. 785, which imposed a special tax on the manufacture, importation and sale or gift of opium or coca leaves or their compounds or derivatives. It required every person subject to the special tax to register with the Collector of Internal Revenue his name and place of business and forbade him to sell except upon the written order of the person to whom the sale was made on a form prescribed by the Commissioner of Internal Revenue. The vendor was required to keep the order for two years, and the purchaser to keep a duplicate for the same time and both were to be subject to official inspection. Similar requirements were made as to sales upon prescriptions of a physician and as to the dispensing of such drugs directly to a patient by a physician. The validity of a special tax in the nature of an excise tax on the manufacture, importation and sale of such drugs was, of course, unquestioned. The provisions for subjecting the sale and distribution of the drugs to official supervision and inspection were held to have a reasonable relation to the enforcement of the tax and were therefore held valid.

The court said that the act could not be declared invalid just because another motive than taxation, not shown on the face of the act, might have contributed to its passage. This case does not militate against the conclusion we have reached in respect of the law now before us. The court, there, made manifest its view that the provisions of the so-called taxing act must be naturally and reasonably adapted to the collection of the tax and not solely to the achievement of some other purpose plainly within state power.

For the reasons given, we must hold the Child. Labor Tax Law invalid and the judgment of the District Court is

*Affirmed.*

Mr. Justice Clarke dissents.