## KENTUCKY WHIP & COLLAR CO. v. ILLINOIS CENT. R. CO.

### No. 7235.

Circuit Court of Appeals, Sixth Circuit.

June 1, 1936.

Charles I. Dawson, of Louisville, Ky. (A. Shelby Winstead and Woodward, Dawson & Hobson, all of Louisville, Ky., on the brief), for appellant.

Blakey Helm, of Louisville, Ky. (Trabue, Doolan, Helm & Helm, of Louisville, Ky., E. C. Craig, of Chicago, Ill., Charles N. Burch, of Memphis, Tenn., and Edmund F. Trabue, of Louisville, Ky., on the brief), for appellee.

G. E. Dean, of Washington, D. C. (Bunk Gardner and Eli H. Brown, III, both of Louisville, Ky., on the brief), for the United States, amicus curiæ.

U. Bon Geaslin, of Washington, D. C. (Hawes & Walsh, of Washington, D. C., on the brief), for Cordage Institute and American Federation of Labor, amicus curiæ.

John J. Bennett, Jr., and Henry Epstein, both of Albany, N. Y., for state of New York, amicus curiæ.

William McCraw and Joe J. Alsup, both of Austin, Tex., for state of Texas, amicus curiæ.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

The appellant employs convict labor in the manufacture of horse collars and strap goods, including harness, in a state penitentiary at Eddyville, Ky. It tendered to the appellee, a common carrier, at its station at Eddyville, 25 packages of collars and harness manufactured by it for shipment to customers in states other than Kentucky. Some of the packages were consigned to customers in states whose laws prohibit the sale within their borders of any goods or merchandise manufactured or produced by convict labor other than by convicts or prisoners on parole or probation; others were consigned to customers residing in states whose laws do not prohibit the sale therein of convict-made goods but require that any such goods exposed or offered for sale shall be plainly marked so as to indicate that they are convict made; and others to customers residing in states whose laws impose no restrictions upon the sale or possession of convict-made goods within their borders. The appellee refused to accept the packages for shipment, giving as its reasons therefor the prohibitions and requirements of the Act of Congress of July 24, 1935 (49 Stat. 494 [49 U.S.C.A. §§ 61–64]), the Ashurst-Sumners Act, which declares: (1) It shall be unlawful to transport or cause to be transported any goods, wares, or merchandise manufactured or produced by convicts or prisoners, except convicts or prisoners on parole or probation, from one state or territory to another state or territory in the United States, where such goods, wares, or merchandise are intended by any person interested therein to be received, possessed, or sold, either in the original package or otherwise, in violation of

any law of such state or territory; and (2) all packages containing any goods, wares, or merchandise manufactured or produced by convicts or prisoners, except convicts or prisoners on parole or probation, when shipped or transported in interstate commerce, shall be plainly and clearly marked so that the name and address of the shipper, the name and address of the consignee, the nature of the contents, and the name and location of the penal or reformatory institution where produced may be readily ascertained on an inspection of the outside of such package. Following the refusal, the appellant brought this action against the appellee seeking a mandatory injunction requiring the appellee to accept the goods for shipment when retendered to it, and for a decree declaring the Ashurst-Sumners Act an illegal exercise of the legislative power of Congress in violation of the Fifth and Tenth Amendments to the Constitution. The trial court found as a fact that the appellant had not labeled any of the packages so as to indicate that the articles therein contained were convict made, and dismissed the bill. (D.C.) 12 F.Supp. 37.

The decree is attacked on the ground that it gives effect to a statute which the Congress had no power, under the commerce clause of the Constitution (article 1, § 8, cl. 3) to enact. It is alleged in the bill that the articles tendered to the appellee were not "in any particular whatever harmful to health, or to the peace, good order or general welfare of the communities into which they are shipped or in which they are used." The lower court found, without hearing evidence, that they "are useful articles of commerce and are not in themselves in any particular harmful to the health, peace or good order of the communities into which they are shipped or in which they are used." It is upon the theory that the goods are innocuous in their character that the appellant insists that the act in question is invalid. We think a proper analysis of the argument is to be made in the light of the effect of the sale of the goods in competition with goods manufactured by free labor. In this view it is pertinent to consider that a "preponderant number" of the states have enacted statutes either prohibiting the sale of convict-made goods within their borders or requiring such goods, before being offered for sale therein, to be plainly marked so as to indicate the source of their manufacture. "All such legislation," as said in Whitfield v. State of Ohio, 56 S.Ct. 532, 535, 80 L.Ed. ——, decided March 2, 1936, proceeds upon the view that free labor,

properly compensated, "cannot compete successfully with the enforced and unpaid or underpaid convict labor of the prison." It was also said in that case that there is "ample support in fact" for the view that the sale of convict-made goods in competition with the products of free labor is an evil. From these pronouncements it is obvious that the legislation of the states designed to prohibit this evil must be deemed to have been enacted pursuant to a sound public policy; indeed, it was so held in the case just referred to in sustaining such legislation in Ohio. The question for decision, therefore, is whether Congress, in aid of the enforcement of a valid public policy of the states, may pass a law excluding convict-made articles from interstate commerce, or requiring the packages containing such articles to be labeled to indicate that the contents are convict-made before permitting them to be shipped in interstate commerce.

The act in question is the culminating step in a course of federal legislation dealing with convict-made goods similar to that enacted by Congress with reference to the transportation of intoxicating liquors. In January of 1929, the Congress passed the Hawes-Cooper Act (45 Stat. 1084 [49 U.S. C.A. § 60]), which provided that all goods, wares, and merchandise manufactured, produced, or mined by convicts or prisoners, except convicts or prisoners on parole or probation, or in any penal or reformatory institution, except commodities manufactured in federal penal and correctional institutions for use by the federal government, transported into any state or territory of the United States for use, consumption or sale, should, upon arrival and delivery in such state or territory, be subject to the operation and effect of the laws of such state or territory to the same extent and in the same manner as though such goods, wares, and merchandise had been manufactured, produced, or mined in such state or territory, and should not be exempt therefrom by reason of their being introduced in the original package or otherwise. The act is almost identical with the language of the Wilson Act (26 Stat. 313 [27 U.S.C.A. § 121]), which dealt with intoxicating liquors, and which was upheld against the contention that it was a delegation of federal power to the states. In re Rahrer, 140 U.S. 545, 11 S.Ct. 865, 35 L.Ed. 572; Rhodes v. Iowa, 170 U.S. 412, 18 S.Ct. 664, 42 L.Ed. 1088. The Hawes-Cooper Act was upheld in Whitfield v. State of Ohio, supra. Finding that the Wilson Act was not effectual in preserving

to the states their freedom to establish and pursue their own public policy affecting the manufacture and sale of intoxicating liquors within their borders, the Congress enacted the Webb-Kenyon law (37 Stat. 699 [27 U.S.C.A. § 122]), which prohibited the shipment of intoxicating liquors from one state or territory into another state or territory intended by any person interested therein to be received, possessed, sold, or used, either in the original package or otherwise, in violation of any law of such state or territory. That act bore the same relation to the Wilson Act as the act here in controversy bears to the Hawes-Cooper Act. It was upheld in Clark Distilling Co. v. Western Ry. Co., 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326, L.R.A.1917B, 1218, Ann.Cas.1917B, 845.

The appellant contends, however, that the decision in the Clark Distilling Company Case and the cases sustaining acts closing the channels of interstate commerce to lottery tickets, impure foods and drugs, stolen automobiles, and the transportation of women for immoral purposes, are inapplicable, because the Congress was dealing in those acts with subjects inherently harmful, and its products are useful and harmless. A sufficient answer to this contention, it seems to us, is that the evils which legislation of this character seeks to remedy are not only those inherent in the nature of the article, but also those resulting from its employment and disposition. It further contends that the right to exclude its products is controlled by the Child Labor Cases (Hammer v. Dagenhart), 247 U.S. 251, 38 S. Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann. Cas.1918E, 724, and (Bailey v. Drexel Furniture Co.), 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432, holding invalid an act of Congress forbidding the transportation in interstate commerce of goods made by children of certain ages. The court was of opinion and held in those cases that the act was an attempt by Congress to impress its views of a desirable state public policy upon the states, and that Congress could not interfere with the purely internal affairs of the states by enacting legislation fixing a minimum age at which children should be permitted to work, a subject reserved to the states under the Constitution. The cases, in our opinion, are inapplicable, for in the act here under consideration there is no attempt to foist or impose a policy on the states. The act is a regulation of commerce among the states but does not invade or interfere with the power of the states to regulate their own internal af-

fairs. It was enacted in aid of the maintenance and enforcement of state laws as was the Webb-Kenyon Act, which was held to be a legitimate exertion of the power to regulate commerce and not to be a delegation of congressional power to the states. The child labor acts, too, did not attempt to preserve to the states their freedom to establish and pursue their own policy within their borders, but attempted to use the powers of Congress over interstate commerce to impose a policy upon the states in their internal affairs to which the federal authority does not extend.

Since Congress has the power to prohibit the shipment of convict-made goods into states having laws prohibiting the sale or possession of such goods or their exposure for sale without labeling them, it would seem necessarily to follow that in aid of the enforcement of such prohibitions it may require a labeling of all packages containing convict-made goods shipped or transported in interstate commerce, regardless of their destination.

The decree is affirmed.