### TAYLOR v. ROBERTSON, Collector of Internal Revenue.

District Court, M. D. North Carolina, Greensboro Division.

802

Whitman & Montsinger, of Winston-Salem, N. C., and Robert H. McNeill, of Washington, D. C., for plaintiff.

Carlisle W. Higgins, U. S. Atty., and Bryce R. Holt, Asst. U. S. Atty., both of Greensboro, N. C., Robert H. Jackson, Asst. Atty. Gen., and Andrew D. Sharpe and Mills Kitchin, Sp. Assts. to Atty. Gen., for defendant.

HAYES, District Judge.

This is an action at law to recover the sum of $314.32 and interest paid as tobacco taxes by the plaintiff under the Kerr-Smith Tobacco Act (48 Stat. 1275, see 7 U.S.C. A. §§ 751–766), on flue-cured tobacco raised on plaintiff's farm in Randolph county, N. C., and sold through various warehouses during the year 1934. This suit is predicated on the plaintiff's contention that the act was unconstitutional. The act has been repealed by Congress.

The plaintiff first sought an injunction against the collection of the tax, but his bill of equity was dismissed for want of equity on the ground that he had a remedy at law, on the authority of Bailey v. George, 259 U. S. 16, 42 S.Ct. 419, 66 L. Ed. 816. He paid the tax and filed a demand for a refund, and the same was denied. It is agreed by the parties that the question involved here under the pleadings is the constitutionality of the act. The validity of the tax depends on the validity of the Agricultural Adjustment Act (48 Stat. 31, see 7 U.S.C.A. § 601 et seq.), and the Kerr-Smith Tobacco Act.

It seems unnecessary to state at length principles of law controlling this case because nothing novel is involved.

The declaration of policy of the Kerr-Smith Tobacco Act, chapter 28, 48 Stat. 1276 (U.S.C. title 7, § 752), is declared by Congress to promote the marketing of tobacco in interstate and foreign commerce, to enable producers of tobacco to stabilize their markets against undue and excessive fluctuations, to prevent unfair competition and practices in putting tobacco into the channels of interstate and foreign commerce, and to more effectively balance production and consumption of tobacco, to raise revenue, and to relieve the present emergency with respect to tobacco.

A tax of 33⅓ per centum of the price for which the tobacco is sold is imposed. U.S.C. title 7, § 753.

The payment warrants are to be given contract producers in addition to rental or benefit payments. Title 7, § 755.

Apparently it was assumed by the Congress that tobacco was essentially a product of interstate and foreign commerce and that the power to regulate its production might be predicated on the commerce clause of the Constitution (Const. art. 1, § 8, cl. 3). No such power exists. Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann.Cas.1918E, 724; Schechter Poultry Corp. v. U. S., 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. But the defendant here does not contend that the authority for this act exists under the commerce clause.

The defendant does insist that the act is authorized under the taxing power (Const. art. 1, § 8, cl. 1). But this power cannot be invoked by Congress as a mere guise in order to accomplish a purpose beyond its delegated powers. When Congress failed to control child labor under the commerce clause, Hammer v. Dagenhart, supra, it endeavored to do the same thing by the imposition of a tax. Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 451, 66 L.Ed. 817, 21 A.L.R. 1432. There the imposition of the tax was defended on the ground that it was an excise tax uniformly levied. But Chief Justice Taft, speaking for the court, said: "The so-called tax is a penalty to coerce people of a state to act as Congress wishes them to act in respect of a matter com-

pletely the business of the state government under the federal Constitution."

By section 760 U.S.C. title 7 (48 Stat. 1279, § 10), the tax is used to pay benefits to contract producers and by section 763 (48 Stat. 1280, § 13 [7 U.S.C.A. § 763]), the tax is to terminate when benefit payments are discontinued. Thus a casual reading of the act reveals that Congress had in mind control of tobacco production; the means to that end involved the payment of benefits to those who volunteered to reduce their tobacco acreage and to exempt their tobacco from taxes (by issuance of tax-exempt warrants). Of course it was known that some producers would not agree to reduce their crops. Indeed exception is made in favor of the conscientious objector. Section 755 (a) (2). But there was every reason to anticipate that the great majority of the producers would willingly become contract producers, hence the problem dealing with the few dissenters. The tax then was imposed to solve this problem. It was the means to compel compliance. But the result is that Congress undertook to regulate the production of tobacco and, fearing the effect of 100 per cent. co-operation on the part of the producers, imposed the tax on the dissenters. Under these conditions I am unable to see why the case is not controlled by the Child Labor Case (Bailey v. Drexel Furniture Co.), supra, and United States v. Butler, supra. For the reasons set forth, judgment will be entered in favor of the plaintiff for taxes illegally collected from him.