**UNITED STATES of America**

v.

**Frank PHILLIPS, Sur Application of Resolute Insurance Company for Remission of Forfeiture.**

**Crim. No. 62–292.**

United States District Court
W. D. Pennsylvania.

Sept. 26, 1967.

Allen N. Brunwasser, Pittsburgh, Pa., for Resolute Ins. Co.

Vincent M. Casey, Pittsburgh, Pa., for Frank Phillips.

Gustave Diamond, U. S. Atty., Pittsburgh, Pa., for the United States.

## OPINION

DUMBAULD, District Judge.

This is an application for remission of forfeiture of a bond. Apparently the application is brought under Rule 46(f) (2) which provides that: "The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture". The standard there enumerated seems to be an appropriate criterion for resolution of the issues here involved, although it may be questionable whether the terms of Rule 46 itself apply to the instant case, as that rule deals with the subject of bail, that is to say with bonds given for the appearance of a defendant for trial.

The bond involved in the instant case, however, was not a bond given to insure appearance of the defendant for trial, but was a transaction governed by Rule 38(a) (3) which provides: "A sentence to pay a fine or a fine and costs, if an appeal is taken, may be stayed by the district court or by the court of appeals on such terms as the court deems proper. *The court may require the defendant pending appeal* to deposit the whole or any part of the fine and costs in the registry of the district court, or *to give bond for the payment thereof,* or to submit to an examination of assets, and it may make any appropriate order to restrain the defendant from dissipating his assets." [Italics supplied]

While we understand that the petitioner, Resolute Insurance Company, contends that the Court had no authority to require this bond, it seems plain that such a bond is authorized by the above-quoted terms of Rule 38(a) (3); and inasmuch as the point was argued by Resolute in the appeal from the declaration of forfeiture in No. 15,766, United States v. Sams, Resolute Insurance Company, Appellant, 375 F.2d 1014 (C.A.3, 1967), nothing more will be said regarding this point, but we shall assume the validity of the bond, and proceed, in accordance with the directions of the Court of Appeals in that opinion, to consider whether any reasons exist justifying remission of the forfeiture affirmed in that opinion.

Frank Phillips was one of the defendants involved in an extensive wagering operation carried on in the Garibaldi Building at New Kensington. He was convicted upon four counts. Phillips did have a tax stamp and was held out as the operator in charge of this establishment, although the stamp did not cover the activities conducted at that address, and although other defendants were shown to have greater actual authority than Phillips did in the conduct of operations. Inasmuch as Phillips was the defendant who did actually have a tax stamp, he was convicted on two additional counts for filing a false tax return in addition to the counts applicable to other defendants. United States v. Sams, 219 F.Supp. 164, 168–169 (W.D.Pa., 1964).

Having been convicted on March 1, 1963, defendant Phillips was sentenced on August 2, 1963, as follows:

"It is the sentence and judgment of the Court that the defendant Frank Phillips pay a proportionate share of the costs of prosecution, and on count one pay a fine of ten thousand dollars and be committed to the custody of the Attorney General for confinement in a penal type institution for a period of two years, provided that upon payment of all fines and costs imposed on this defendant execution of the sentence as to imprisonment shall be suspended. And, upon count two, that the defendant pay a fine of ten thousand dollars, and upon count three a fine of five thousand dollars, and upon count four a fine of five thousand dollars, it being the intention of the Court that the total fine be thirty thousand dollars and be paid forthwith."

Subsequently a sentence to the same effect was signed upon the printed forms provided by the Administrative Office. United States v. Sams, 241 F.Supp. 427, 428 (W.D.Pa., 1965).

On January 13, 1965, the Court of Appeals sustained the convictions but held that the provisions of the sentences regarding suspension of the imprisonment imposed were defective by reason of being indefinite and conditional. That Court held that the sentencing court may suspend execution of a term of imprisonment only upon placing the defendant upon probation for a specified period, and prescribing the term and conditions of that probation. The case was remanded to the sentencing court with directions to correct the sentences accordingly.

On remand the Government contended that on re-sentencing the whole matter was to be considered *de novo;* but the defendants contended, and the Court concluded, that close examination of the language of the opinion of the Court of Appeals indicated that the only invalidity in the original sentence was with respect to the suspension of the terms of imprisonment imposed. Counsel were therefore directed to apply to the Court of Appeals for a correction of the mandate in the case of defendant Mike Giorano, in conformity with this conclusion. United States v. Sams, 241 F.Supp. 427, 429–430 (W.D.Pa., 1965). Subsequently such modification of the mandate was made, thus confirming the conclusion of the sentencing court that the fine originally imposed on defendant Phillips remained in force, and that only the sentence of imprisonment and suspension thereof required correction.

Accordingly, on June 7, 1965, the defendants appeared before the Court for re-sentencing, at which time the following, *inter alia,* took place:

THE COURT: The new mandate in the case of Michael Giorano, alias Nick Jerome, simply affirms the judgment of conviction and does not include the former provision about correcting the sentence, the Court of Appeals at No. 14,577, under date of May 25, 1965, having made an order reading as follows: "It appearing to the Court that the mandate in this matter contains the following provision: 'the cause is remanded to the district court with directions to correct the judgment of sentence of August 2, 1963, in accordance with the opinion of this Court'; and, it further appearing that this provision was inadvertently included in the mandate; IT IS ORDERED that the mandate be corrected and amended by eliminating therefrom the said provision. William F. Smith, Circuit Judge."

And then the corrected mandate was received and filed by the Clerk's Office of this Court on May 27, 1965, which simply provides that the judgment of conviction of August 2, 1963, by the district court "be and it hereby is affirmed."

Therefore I presume there is nothing needs to be done at this time in the case of Michael Giorano.

\*   \*   \*   \*   \*   \*

It is the sentence and judgment of the Court that the defendant, Frank Phillips, pay a proportionate share of the costs of prosecution, and on Count 1 pay a fine of ten thousand dollars, forthwith, and be committed to the custody of the Attorney General for confinement in a penal-type institution for a period of two years, which term of imprisonment is suspended and the defendant placed on probation for a period of two years, it being an express term of the terms of probation that the fines imposed be paid within a period of fifteen days.

And on Count 2, that the defendant pay a fine of ten thousand dollars; upon Count 3 a fine of five thousand dollars, and upon Count 4 a fine of five thousand dollars, the provisions concerning imprisonment and suspension and the terms of probation providing for the payment of the fines within a period of fifteen days being applicable to each of the counts. (Tr. 2-3, 13-14).

Subsequently a sentence to the same effect was signed upon the printed forms provided by the Administrative Office.

The fine imposed upon the defendant Phillips has never been paid.

On August 2, 1963, the date of the original sentence, pursuant to Criminal Rule 38(a) (3) as heretofore quoted, defendant Phillips was enlarged pending appeal upon filing a bond in the amount of $30,300.00, executed by himself and by the applicant, Resolute Insurance Company.

The terms of the bond are as follows:

"We, the undersigned, jointly and severally acknowledge that we and our personal representatives are bound to pay to the United States of America the sum of Thirty Thousand Three Hundred dollars ($30,300.00).

The conditions of this bond are that the defendant Frank Phillips appear and pay a fine of $30,000.00 and costs of prosecution in the amount of $237.-85 to the Clerk of Court forthwith.

If the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and by other laws of the United States.

It is agreed and understood that this is a continuing bond which shall continue in full force and effect until such time as the undersigned are fully exonerated."

On November 18, 1965, a hearing was held at which the bond was forfeited, it clearly appearing that the fine had not been paid.

The forfeiture was affirmed by the Court of Appeals on April 18, 1967, with permission to Resolute to file a motion in the District Court, addressed to the discretion of that Court, for a full hearing as to the present situation regarding the bond in the case; said motion to be filed within fifteen (15) days after remand. United States v. Sams, 375 F.2d 1014 (C.A.3, 1967).

Pursuant to this permission, the instant petition for remission of forfeiture was filed, and a hearing held on June 26, 1967.

■ Resolute repeats its contention that the sentence imposing the fine upon defendant Phillips was a nullity. In view of the above-cited action of the Court of Appeals, nothing more need be said with respect to this point. It seems plain that the fine was validly imposed.

It seems equally plain that the applicant Resolute duly bound itself by its bond to the payment of the fine; and that, the fine not having been paid, the surety must pay.

While reluctance to pay money is doubtless a widespread human trait, we see no good grounds for Resolute's protracted and vigorous resistance to the due liquidation of its just debts. In the industry with which defendant Phillips was connected, we believe that such behavior as Resolute has engaged in would be described as "welshing".

The circumstance chiefly relied upon by applicant to appeal to the sympathy of the Court is the testimony of Guy C. Read at the hearing of June 26, 1967, to the effect that under an arrangement subsequently made between him and Resolute, he will be liable to pay personally the delinquency on this bond. Mr. Read was the party who signed the bond on August 2, 1963, on behalf of Resolute, but the principal negotiator on behalf of the company at that time was another individual who subsequently became involved in difficulties of some sort and Mr. Read took over his business. Apparently one of the terms of this substitution of agents for Resolute was that Mr. Read would assume liability for delinquencies arising in connection with business theretofore booked by the other agent.

■ This supervening substitution we do not think can in any respect affect the liability of Resolute on the bond which it duly executed. Such substitution was a matter effected by contract, and occurring at a date after the bond had gone into force. It is simply a matter of private arrangement, such as any agreements Resolute might have made with principals on bonds which it wrote to provide collateral or other means of protection for the company. The justice of requiring the company to make good on its duly assumed obligations is in no wise affected by the subsequent arrangements with Read. The government should not be deprived of its duly stipulated security by reason of these later dealings between other parties.

While we sympathize with Mr. Read's predicament, it must be recognized that it is one which he brought upon himself by his arrangement with Resolute; and that presumably the anticipated benefits of the arrangement to take over his predecessor's business were sufficiently greater than the corresponding burdens as to make his bargain an attractive one.[1] If the arrangement between the company and its agent is unfair, relief might possibly be had on application to the Insurance Commissioner. Perhaps an arrangement placing the entire burden of meeting Resolute's liability on a bond duly issued by it upon the agent writing the business might be deemed to be an improper mode of re-insurance, or otherwise subject to regulatory authority to prevent any undue burden upon the agent. In any event the matter is not one which can properly affect the liability of Resolute to the United States upon its validly undertaken obligation.

■ The second argument advanced by Resolute is that the difference between the terms of the first sentence of August 2, 1963, and of the second sentence of June 7, 1965, is sufficiently

---

1. The total fines imposed in this case on August 2, 1963, amounted to $110,000.00. We do not know what Mr. Read earned on this aggregate business. All defendants except Phillips have paid. Nor do we know what other outstanding business Mr. Read's predecessor had booked at the time of the transfer of the agency. The situation seems to be one calling for application of the maxims *res transit cum onere* and *qui sentit commodum sentire debet et onus.*

substantial as to constitute a change of the terms of the risk, which would exonerate the surety. We are not impressed by this argument. The difference between the two sentences appears to us to be nothing more than the difference between tweedledum and tweedledee.

Insofar as the fine is concerned, which is the obligation which Resolute undertook to be liable for, there was no change whatever when the re-sentencing occurred. The fine stood intact, like a first mortgage during junior financing. The change with respect to imprisonment and probation was simply a technical change undertaken in order to comply with the procedural requirements of the statute as pointed out in the opinion of the Court of Appeals.

The power of the Court to incarcerate the defendant in the event of non-payment is the same and as great in the one case as in the other. So, too, is the power of the Court to relieve the defendant from imprisonment on account of ill health or for other reasons if justice should so require. There is no significant difference between the two sentences insofar as the surety's risk is concerned.

■ Likewise we find no merit in Resolute's third contention, namely that the company ought not to be required to pay until after defendant Phillips has been incarcerated for non-payment. The propriety of sanctions against defendant Phillips is a matter between him and the Government and the Court. Insofar as Resolute is concerned, that is *res inter alios acta*. Resolute's obligation to pay has been duly perfected in accordance with the terms of its bond.

■ It must be strongly emphasized that the very purpose of requiring bonds

such as that on which Resolute became liable in this case is in order to avoid the necessity of pursuing a remedy against a debtor of questionable habits and dubious ability to pay. The very object of requiring a bondsman is to substitute for such an unreliable character a debtor of responsibility and known ability to pay. Resolute's liability being clear in accordance with the terms of the bond, it seems plain that justice requires the enforcement of the forfeiture.

This of course does not affect Resolute's right to subrogation or to any collateral or other protection which it may have to mitigate the impact of its own liability.

It seems plain therefore that the motion for remission of the forfeiture must be denied, and judgment entered accordingly in accordance with the terms of the bond.

■ However, once the money has been paid into Court by Resolute, and thus made available in accordance with Resolute's duly undertaken obligation without being subject to further forensic shuffling and stalling and shilly-shallying, we are willing to direct that it be held by the Clerk subject to further order of the Court and not immediately covered into the Treasury irretrievably.[2] Counsel for Resolute mentioned at the last hearing that the Supreme Court of the United States now has pending before it the *Grosso* case [3] and other cases raising the question whether the anti-wagering statute for violation of which the defendant Phillips and others have here been convicted is constitutional or not.

Although this statute has been upheld in United States v. Kahriger, 345 U.S. 22, 32, 73 S.Ct. 510, 97 L.Ed. 754 (1953), it is noteworthy that Justice Frankfurter there dissented and characterized the presentation of the statute in the form

---

2. Once in the Treasury, money cannot be withdrawn for any purpose without authorization by virtue of a law enacted by the Congress. U.S.Constn., Art. I, sec. 9, cl. 7. See Dumbauld, The Constitution of the United States, 213–16 (1964).

3. United States v. Grosso, 358 F.2d 154, 164 (C.A.3, 1966).

of a revenue measure as nothing but "verbal cellophane" (P. 38, 73 S.Ct. 510), and came close to adopting the same line of reasoning which had upheld child labor in Bailey v. Drexel Furniture Co., 259 U.S. 20, 36, 38, 42 S.Ct. 449, 66 L.Ed. 817 (1922). See Dumbauld, The Bill of Rights and What It Means Today, 66 (1957). Likewise there may be a tendency now toward acceptance of the dissenting views in Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L. Ed. 1787 (1948), where Justice Frankfurter observed that "If Congress by the easy device of requiring a man to keep the private papers that he has customarily kept can render such papers 'public' and non-privileged, there is little left to either the right of privacy or the constitutional privilege." Justice Jackson likewise commented that "The protection against compulsory self-incrimination, guaranteed by the Fifth Amendment, is nullified to whatever extent this Court holds that Congress may require a citizen to keep an account of his deeds and misdeeds and turn over or exhibit the record on demand of government inspectors, who then can use it to convict him." Ibid., 70. See Dumbauld, The Bill of Rights and What It Means Today, 85 (1957). Under the prevailing climate in the judicial stratosphere, it is not possible to say that the constitutional claim is without merit.

So long, therefore, as the Government is protected by Resolute's payment of the money into Court, it may be advisable to hold the fund impounded until the Supreme Court has disposed of the cases now pending involving the constitutionality of the anti-wagering statute. In the event that the statute for violation of which defendant has been convicted should be held unconstitutional in its entirety, it would perhaps be appropriate to return the money to Resolute. It should, therefore, be kept intact and separate in the custody of the Clerk of this Court until further order of this Court.