PETRANEK *v.* MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY CO.

1. COURTS—EQUITY—COLLATERAL ATTACK OF SETTLEMENT OF INFANT'S CLAIM UNDER PROBATE COURT ORDER.

A settlement made by and under an order of the probate court of an infant's claim against a railroad company for personal injuries may not be collaterally attacked, but equity has jurisdiction in a direct proceeding to set it aside as unfair or fraudulent.

---

[1]Courts, 15 C. J. § 443; Guardian and Ward, 28 C. J. § 206; Judgments, 34 C. J. § 824.

2. COMMERCE — RAILROADS — INTERSTATE COMMERCE — INFANTS —
   MASTER AND SERVANT — FEDERAL EMPLOYERS' LIABILITY ACT —
   EVIDENCE.

    In an action against a railroad company under 2 Comp.
    Laws 1915, § 5332, forbidding the employment of males
    under the age of 18 years in any hazardous employment,
    for personal injuries to a boy aged 16 years and 8 months,
    evidence that, at the time of the injury, both the boy and
    the company were engaged in interstate commerce was
    improperly rejected, since, if they were so engaged, the
    right of action, if any, was under the Federal employers'
    liability act rather than under the State statute.

Error to Gogebic; Driscoll (George O.), J.    Submitted June 17, 1927.    (Docket No. 74.)    Decided December 1, 1927.

Case by Paul Petranek against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company for personal injuries.    Judgment for plaintiff.    Defendant brings error.    Reversed.

*Charles M. Humphrey* and *John E. Palmer,* for appellant.

*Jones & Patek,* for appellee.

CLARK, J.    The plaintiff, Paul Petranek, a boy aged 16 years and nearly 8 months, and Clio McDonald, a boy aged 15 years and 3 months, were employed by defendant railway company as section hands.    Plaintiff was injured by being struck, accidentally, by a pick in the hands of the boy McDonald.    Plaintiff brings this suit for damages, basing his right to recover upon section 5332, 2 Comp. Laws 1915, forbidding the employment of males under the age of 18 years in any hazardous employment, and evidence of violation thereof.    Plaintiff was injured on August 4, 1920. On February 14, 1921, he filed petition in the probate court of the county praying appointment of a guardian

----

²Commerce, 12 C. J. §§ 52, 101; Master and Servant, 39 C. J. §§ 385, 1141, 1224 (Anno).

and nominating Charles Petranek, his father, guardian. Order appointing the nominee as guardian was made and bond was filed and duly approved.

On February 23, 1921, the guardian filed petition in said probate court in usual form, relating the accident, the claim, dispute, and a proposed settlement, reporting that it was for the best interests of the minor that the controversy be settled, and praying that he be authorized to settle for $200 and to give release and discharge to defendant. The probate court entered an order authorizing the guardian to settle, which order recites:

"* * * And the court having duly considered said petition, and the same having this day come on to be heard and it appearing to the court that said settlement is fair and just and for the best interests of said minor and of his said estate." * * *

The matter was settled accordingly, the guardian paid by defendant $200 and release and discharge given.

This suit was commenced by declaration filed April 27, 1925. Plaintiff had verdict and judgment. Defendant brings error.

A number of questions have been saved, properly, for review. We will consider but two of them. The order of the probate court by and under which the settlement was made is not void and is not open to collateral attack. It was held in *Berdan* v. *Insurance Co.*, 136 Mich. 396 (4 Ann. Cas. 332), quoting syllabus:

"Equity has jurisdiction to set aside a fraudulent settlement of a minor's claim against an insurance company, made by his guardian under the direction of the probate court, as there is no adequate remedy at law."

And in *Dudex* v. *Sterling Brick Co.*, 237 Mich. 470, 477:

240—Mich.—42.

"To set aside a settlement made by and under an order of the probate court which it had jurisdiction to make, as unfair or fraudulent, there must be direct proceeding for that purpose, a bill in equity."

In *Smith* v. *Port Huron Gas & Electric Co.*, 217 Mich. 519, the rule was applied to an agreement for compensation under the workmen's compensation · act which had been approved by the department, and it was held that the agreement "may not be impeached for fraud in a collateral proceeding, but may be impeached in a direct proceeding in equity." See *Smith* v. *Port Huron Gas & Electric Co.*, 222 Mich. 350. It was error to permit such collateral attack in the case at bar and for that reason a new trial must be granted.

Defendant offered evidence to show that at the time of the accident both plaintiff and defendant were engaged in interstate commerce. The evidence was rejected. This was error. If the accident arose while the parties were engaged in interstate commerce, plaintiff's cause of action, if any, was under the Federal employers' liability act, and plaintiff might not then rely upon a violation of a statute of the State as evidence or proof of negligence.

Plaintiff contends that, while the general rule may be to that effect, this is an exceptional case, relating to child labor, which is a matter for State regulation; citing *Hammer* v. *Dagenhart*, 247 U. S. 251 (38 Sup. Ct. 529, 3 A. L. R. 649); *Child Labor Tax Case*, 259 U. S. 20 (42 Sup. Ct. 449, 21 A. L. R. 1432). The *Hammer Case* dealt with a Federal statute prohibiting transportation in interstate commerce of goods made at a factory in which within 30 days prior to their removal therefrom, children under 14 years of age had been employed or permitted to work, etc., and the statute was held unconstitutional as exceeding the commerce power of congress. In the *Child Labor Tax Case* the Federal statute sought to penalize, to discourage and to suppress, under the guise of a tax,

the employment of child labor, and it, too, was held unconstitutional. The holding of these cases is chiefly to the effect that the regulation of child labor in factories, mills, mines, and shops within the States is a purely State authority. By these decisions there was no loss of the power to regulate interstate commerce under the commerce clause. That power is thus defined in the *Hammer Case,* quoting from syllabus:

"The power to regulate interstate commerce is the power to prescribe the rule by which the commerce is to be governed; in other words, to control the means by which it is carried on."

In its undoubted right to control the means by which interstate commerce is carried on, clearly congress may cover the matter of employer's liability to employees. It is perhaps unnecessary to say that congress has entered the field, but we quote from *Chicago, etc., R. Co.* v. *Coogan,* 271 U. S. 472, 474 (46 Sup. Ct. 564):

"By the Federal employers' liability act, congress took possession of the field of employers' liability to employees in interstate transportation by rail; and all State laws upon that subject were superseded. *Second Employers' Liability Cases,* 223 U. S. 1, 55 (32 Sup. Ct. 169, 38 L. R. A. [N. S.] 44); *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, 501 (34 Sup. Ct. 635, L. R. A. 1915C, 1). The rights and obligations of the petitioner depend upon that act and applicable principles of common law as interpreted by the Federal courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the act; and proof of such negligence is essential to recovery. The kind or amount of evidence required to establish it is not subject to the control of the several States."

Of the effect of such congressional action we quote from *Erie R. Co.* v. *New York,* 233 U. S. 671, 681 (34 Sup. Ct. 756, 52 L. R. A. [N. S.] 266):

"Indeed, when congress acts in such a way as to manifest its purpose to exercise its constitutional authority the regulating power of the State ceases to exist."

And from *Prigg* v. *Pennsylvania,* 16 Pet. (U. S.) 539:

"For, if congress have a constitutional power to regulate a particular subject, and they do actually regulate it in a given manner, and in a certain form, it cannot be that the State legislatures have a right to interfere, and as it were, by way of complement to the legislation of congress, to prescribe additional regulations, and what they may deem auxiliary provisions for the same purpose.    In such a case the legislation of congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject-matter.    Its silence as to what it does not do is as expressive of what its intention is as the direct provisions made by it.    This doctrine was fully recognized by this court in the case of *Houston* v. *Moore,* 5 Wheat 1, 21, 22, where it was expressly held that where congress have exercised a power over a particular subject given them by the Constitution, it is not competent for State legislation to add to the provisions of congress upon that subject; for that the will of congress upon the whole subject is as clearly established by what it has not declared as by what it has expressed."

Other questions are not likely to arise again.

Judgment reversed, with costs to appellant.    New trial granted.

SHARPE, C. J., and BIRD, FELLOWS, WIEST, and MCDONALD, JJ., concurred.

The late Justice SNOW and Justice STEERE took no part in this decision.