**KINGAN & CO., Inc., v. SMITH.**

No. 1851.

District Court, S. D. Indiana, Indianapolis
Division.

Dec. 10, 1936.

218

Thompson, Rabb & Stevenson, of Indianapolis, Ind., for complainant.

Val Nolan, U. S. Atty., of Indianapolis, Ind., Robert H. Jackson, Asst. Atty. Gen., and Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to Atty. Gen., for defendant.

BALTZELL, District Judge.

This is an action in which the complainant challenges the validity of certain provisions of the Revenue Act of 1936 (49 Stat. 1652). The provisions of the act thus challenged, and the only provisions with which we are here concerned, are found in title 3, section 501 (26 U.S.C.A. § 345), and are as follows:

"Sec. 501. *Tax on Net Income from Certain Sources*

"(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

"(1) A tax equal to 80 per centum of that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such person but not paid which is attributable to shifting to others to any extent the burden of such Federal excise tax and which does not exceed such person's net income for the entire taxable year from the sale of articles with respect to which such Federal excise tax was imposed."

The provisions of this act apply only to taxable years ended in the calendar year 1935 and thereafter. One of the taxable years of complainant ended on October 26, 1935, and the other ended on October 31, 1936.

There are twenty-four cases pending in this court challenging the validity of this act. While the facts in each case may be somewhat different, yet the law, as construed in this case, shall be applicable to each case, and this opinion, while filed in the instant case, shall be equally applicable to each.

The bill of complaint was filed on the 6th day of August, 1936. On the 25th day of August, the defendant filed a motion to dismiss the bill upon the ground "that this court is without jurisdiction of the sub-

ject matter of this suit. * * *" The motion was briefed by both parties and argued orally. Although the complainant presented briefly the question of the validity of the act in its oral argument, the defendant neither briefed nor argued that question. The court, at the time, was of the opinion that it was not necessary to determine the validity of the act in passing upon the motion to dismiss and suggested that argument be confined to the jurisdictional question presented by such motion. In other words, the question presented by such motion was, in addition to that of complainant having an adequate remedy at law, primarily, whether or not the allegations contained in the bill were sufficient to take the case outside of the statute prohibiting the maintenance of a suit for the purpose of restraining the assessment and collection of a federal tax (26 U.S.C.A. § 1543) and thus confer jurisdiction upon a court of equity. The court, on the 30th day of September, overruled the motion to dismiss, thereby holding that a court of equity has jurisdiction of the subject-matter in this suit. (D.C.) 16 F.Supp. 549. The question of the validity of the act was not considered in that ruling, and, if any of the language contained in the written memorandum filed upon that date can be so construed, it was not so intended. An examination of the allegations contained in the bill clearly discloses jurisdiction in a court of equity. See E. C. Atkins & Company v. Dunn (C.C.A.) 28 F.(2d) 5; Hart v. Keith Vaudeville Exchange, 262 U.S. 271, 43 S.Ct. 540, 67 L.Ed. 977; Binderup v. Pathe Exchange, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308.

After the overruling of the motion to dismiss, the defendant refused to answer, and consequently, in accordance with Equity Rule 29 (28 U.S.C.A. following section 723), an order pro confesso was entered on the 27th day of October. More than thirty days having elapsed since the entry of such order, complainant is now entitled to a final decree. There remains, however, one question for the court to determine before the entry of such decree, and that is whether or not the challenged act is valid. The nature of the decree depends upon the answer to that question. As was said in the case of Huston, Collector, v. Iowa Soap Company, a corporation, 85 F.(2d) 649, 652 (C.C.A.8): "A court of equity will not grant an injunction in the face of the statute unless there

exists simultaneously an illegal tax and some such 'special and extraordinary circumstances.' If either element is lacking, injunctive relief will be denied." In its ruling upon the motion to dismiss in the instant case, the court determined only that the allegations contained in the bill of complaint disclosed "circumstances which are rather exceptional and extraordinary" and sufficient to justify a court of equity in assuming jurisdiction. The other element, that is, the validity of the challenged act, must now be determined.

Pursuant to Equity Rule 70½ (28 U.S. C.A. following section 723), the court has filed its special findings of fact and conclusions of law.

The complainant is a New Jersey corporation organized under the laws of that state, but having its principal place of business in the city of Indianapolis, Ind., in which state it is admitted to do business. The defendant is the collector of internal revenue for Indiana, and is required, under the law, to collect all taxes imposed by virtue of the challenged act. Complainant is a first processor of hogs and has been since the 12th day of May, 1933, the date of the enactment of the Agricultural Adjustment Act (48 Stat. 31), under which act it was liable for the payment of certain taxes as therein provided. It paid such taxes until the early part of the year 1935, at which time it refused to make further payments, and on the 15th day of June of that year it filed suit in this court to enjoin their further collection. An injunction was issued enjoining temporarily the collection of further taxes thereunder, upon condition, however, that complainant deposit in designated banks the amount of such taxes as they became due, such sum thus deposited to be returned to it in the event such act was finally declared invalid, but to be paid to defendant in the event its validity was upheld. Shortly following the decision of the Supreme Court of the United States, in the case of United States v. Butler et al., 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, declaring such act invalid, there was returned to complainant, by order of this court, the entire amount thus deposited in the total sum of $2,543,832.30. This sum represents the amount of processing taxes which complainant refused to pay under the Agricultural Adjustment Act, and for which it would have been liable had that act been held valid.

It is complainant's contention that the proposed levy under title 3, section 501 (a) (1) of the act in question (26 U.S.C.A. § 345 (a) (1), is not a true tax, but is an arbitrary and capricious exaction amounting to confiscation of its property; that its property will be taken by virtue of the provisions of the act without due process of law and for a public use without just compensation. It further contends that the exaction is in the nature of a penalty to be inflicted upon it because of its successful opposition to the payment of the taxes ·levied by virtue of the provisions of the Agricultural Adjustment Act; that it is, in effect, an attempt to nullify its relief from the payment of the processing tax and to validate that tax to the extent of the amount to be levied and collected by virtue of the challenged act; that it provides for an invalid classification of taxpayers and incomes, exempting processors who paid the processing tax and their incomes, and taxing processors who successfully resisted payment and their incomes because of such resistance. If the proposed levy is a tax, it is contended, it is not an income tax because of the arbitrary method in which it is to be calculated, having no relation to income, although limited thereby. If a tax, it is a direct tax and void for lack of apportionment, as required by article 1, section 2, clause 3, and section 9, clause 4, of the Constitution of the United States.

■ It is to be noted that the provisions of the act in question apply to "that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such person but not paid which is attributable to shifting to others to any extent the burden of such Federal excise tax." 26 U.S.C.A. § 345 (a) (1). The excise tax contemplated in this act, in so far as processors of hogs, grain, etc., are concerned, has reference to the tax created by the invalidated Agricultural Adjustment Act, and the persons affected thereby such processors as refused to pay such taxes,' or were reimbursed therefor, but, nevertheless, to some extent, shifted their burden to others. In other words, the act is intended to levy a tax upon the income of processors which was derived from a collection of such excise tax from others, retained by the processors and not paid in accordance with the provisions of the Agricultural Adjustment Act. This places in the same class all persons who derived and retained a net income from that source and seeks to tax that income at a higher rate than the ordinary income received by such persons. Persons may be engaged in the same line of business, that is, in the processing of meat, and yet be in a different class for the purpose of determining their taxing status. See State Board of Tax Commissioners et al. v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 543, 75 L.Ed. 1248, 73 A.L.R. 1248.

■ ■ The Sixteenth Amendment to the Constitution grants to Congress the "power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and 'without regard to any census or enumeration." By virtue of the provisions of the act challenged, Congress sought to levy and collect a tax upon a certain kind of income received by a certain class of persons from a particular source under the power vested in it by such Amendment. It is the contention of complainant that if it is a tax, it is a direct tax and is void for lack of apportionment, as provided in the Constitution. The Supreme Court, in the case of Pollock v. Farmers' Loan &ˈTrust Company, 157 U.S. 429, 15 S.Ct. 673, 680, 39 L.Ed. 759, said: "Thus, in the matter of taxation, the constitution recognizes the two great classes of direct and indirect taxes, and lays down two rules by which their imposition must be governed, namely, the rule of apportionment as to direct taxes, and the rule of uniformity as to duties, imposts, and excises." This same view was expressed by Mr. Chief Justice Chase in License Tax Cases, 5 Wall. 462, 471, 18 L.Ed. 497, as follows: "It is true that the power of Congress to tax is a very extensive power. It is given in the Constitution, with only one exception and only two qualifications. Congress cannot tax exports, and it must impose direct taxes by the rule of apportionment, and indirect taxes by the rule of uniformity. Thus limited, and thus only, it reaches every subject, and may be exercised at discretion." A direct tax is a capitation tax, a tax upon real estate and upon income derived from real estate and from personal property held for investment, and upon income of personal property. Pollock v. Farmers' Loan & Trust Company, 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108. The tax created by the challenged act has none of the features of a direct tax, and if a tax, is an income tax, and is, therefore, subject only to the rule of geographical uniformity which is

synonymous with the expression "to operate generally throughout the United States." In the Head Money Cases, 112 U.S. 580, 5 S.Ct. 247, 252, 28 L.Ed. 798, the court said: "The tax is uniform when it operates with the same force and effect in every place where the subject of it is found." If an income tax, no apportionment is required as provided in sections 2 and 9 of article 1 of the Constitution. See Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Patton v. Brady, Executrix, 184 U.S. 608, 22 S.Ct. 493, 46 L. Ed. 713; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas.1912B, 1312; Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596; Brushaber v. Union Pacific Railroad Company, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713.

■ It is conceded by complainant that the federal government has the power to tax one and to exempt another, and to tax one kind of income at a higher rate than another, just so long as a lawful basis for the classification in each particular case exists. There can be no doubt as to this rule. See R. Hoe & Company v. Commissioner (C.C. A.) 30 F.(2d) 630. In the instant case, however, it is contended that the lawful basis for the classification provided by the act in question is lacking. Speaking upon that subject in its brief, complainant says: "Only those are to be taxed who did not pay, or were reimbursed after having paid the processing tax. Those who paid the processing tax will not be subject to this one. A classification which exempts from taxation those who submitted to an unlawful demand and taxes only those who lawfully refused so to submit, or the beneficiaries of their refusal, is unlawful." Of course, those processors who paid the tax in accordance with the provisions of the Agricultural Adjustment Act up to the time of its invalidation by the Supreme Court, in the case of United States v. Butler et al., supra, and were not reimbursed, have no income derived from the source specified in the act in question upon which to pay a tax, and hence, the act has no application to such persons. They are in an entirely different class, in so far as the income sought to be taxed is concerned, from those who collected from others and retained the amount thus collected. The fact that they may be engaged in the same line of business does not, necessarily, mean that they are in the same class for taxation purposes. State Board of Tax Commissioners et al. v. Jackson, supra. It may be that those who collected the tax from others, retained it and refused to pay the same to the government, exercised good judgment, but they are, nevertheless, in the same class, and in a class alone, when it comes to considering the income received by them from that particular source, and the fact that such act was declared invalid does not affect or alter the situation. Complainant had a perfect right to refuse to pay the taxes levied under such act, and to contest its validity, but, if it collected from others the amount of such taxes and retained the amount so collected, it then had an income from an entirely different source from that derived from the conduct of its ordinary business, and entirely different from other processors who paid this tax and were not reimbursed. The act in question seeks to levy and collect a tax upon this income, and it applies equally to all persons in that class. The amount of money thus collected and retained cannot be said to be such as to which a person would ordinarily be entitled or receive in the conduct of his business. In other words, it is in excess of the usual amount received by him in the conduct of such business when the same volume is considered, and, as such, Congress had the power to place in a separate class all persons having such an income, and to enact legislation imposing a tax thereon.

■ There is nothing in the act—and this is conceded by complainant—to indicate that the revenue to be derived from the levy and collection of the tax created thereby is to go into any fund other than the general fund of the government, and when paid, into the general fund, it necessarily follows that it is to be used for the purpose of defraying its expenses the same as other revenue collected by means of taxes. The fact that the government had outstanding certain contracts with farmers providing for the payment of certain benefits under the provisions of the Agricultural Adjustment Act at the time of its invalidation, that it recognized its moral obligation, at least, thereunder, and that money must be provided for the payment of such obligations, seems to shed no light upon the question under consideration. Had the challenged act contained provisions for the payment of such obligations from the revenue derived from the taxes created thereby, an entirely different sit-

uation would have existed. The tax would then have been used to pay an obligation which the Supreme Court had held to be invalid. In so far as revealed by the provisions of the act, and by the facts in this case, no part of the revenue to be collected thereunder is to be used to pay any part of such obligations.

The purpose or motive of Congress, in enacting this legislation, is not to be considered in determining the validity of the act, unless the taxes thus levied and collected are not for revenue, but, as said by the Supreme Court, in the case of Mc-Cray v. United States, 195 U.S. 27, 24 S.Ct. 769, 780, 49 L.Ed. 78, 1 Ann.Cas. 561, are "solely for the purpose of destroying rights which could not be rightfully destroyed consistently with the principles of freedom and justice upon which the Constitution rests." In that case the court also said: "It being thus demonstrated that the motive or purpose of Congress in adopting the acts in question may not be inquired into, we are brought to consider the contentions relied upon to show that the acts assailed were beyond the power of Congress, putting entirely out of view all considerations based upon purpose or motive." See, also, A. Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 601, 78 L.Ed. 1109, in which the Supreme Court, speaking through Mr. Justice Sutherland, said: "Collateral purposes or motives of a Legislature in levying a tax of a kind within the reach of its lawful power are matters beyond the scope of judicial inquiry." Again, in the case of State Board of Tax Commissioners et al. v. Jackson, supra, the court said: "It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation." Thus, it will be seen that the contentions of complainant that the act in question was enacted to evade the invalidation of the Agricultural Adjustment Act; that it is an attempt to recapture a large amount of the money which complainant refused to pay under the provisions of such invalidated act; that it will tend to nullify the effect of a former decree of this court; and that it is an attempt to validate a large portion of the processing tax which complainant refused to pay, are immaterial in the consideration of the validity of such act, if the exaction under the act is, in fact, a tax. Complainant recognizes the foregoing rule,

but asserts that the act in question does not impose a tax, but is in the nature of a penalty, being enacted in an effort to penalize complainant for its refusal to pay an invalid tax. In support of its contention, reference is made to two lines of decisions, those typified by the case of McCray v. United States, supra, and those typified by the decisions of Bailey, Collector, v. Drexel Furniture Company, 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432; Hill v. Wallace, Secretary of Agriculture, et al., 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; Helwig v. United States, 188 U.S. 605, 23 S.Ct. 427, 47 L.Ed. 614; United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 195.

In the case of Bailey, Collector, v. Drexel Furniture Company (Child Labor Case), supra, the court held the law invalid because it was an attempt to regulate the employment of children by means of an exaction designated as a tax. The exaction applied only to employers of children under a certain age, and was held by the court to be a penalty and in the nature of a regulation, asserting, in substance, that it must be blind if it could not see that the so-called tax was imposed to stop the employment of children.

In the case of Hill v. Wallace, Secretary of Agriculture, et al., supra, the court held the act invalid which provided for a tax of 20 cents per bushel on sales of grain for future delivery, thus holding the act to be an attempt to regulate the conduct of Boards of Trade through the supervision of the Secretary of Agriculture. It was apparent that its purpose was to force the Boards of Trade to comply with such regulations.

In the case of Helwig v. United States, supra, an act which provided for an additional levy upon imported goods which were undervalued by the taxpayer was held invalid upon the ground that it was a penalty imposed because of the failure of the taxpayer to make a proper valuation of his goods.

In the case of United States v. Constantine, supra, the act in question was held invalid because it exacted a penalty in the nature of a tax for the violation of a state law, and, as such, it was beyond the limits of federal power and was an invasion of the police powers inherent in the state.

The challenged act does not fall within the rule laid down in either of the above four cases. It is not an attempt to compel

a processor to do or to refrain from doing a certain thing or be subject to a tax. Neither is it an attempt to punish him for having done an unlawful act, nor for his refusal to pay a tax under an invalid statute. It is an attempt to tax an income received by a processor separate and apart from the regular income which he would receive in the normal conduct of his business. If he has no such income, then, under the provisions of the act, he is not required to pay. If he has such an income, then Congress has the power to levy a tax thereon.

■ The fact that the rate of taxation, as fixed in the act, is high, does not necessarily either constitute confiscation, deprive one of property without due process of law, or invalidate the act. When a person engages in business, he does so with the full knowledge of the power of lawmaking bodies to levy a tax upon his earnings and upon his property. The Supreme Court, in the case of Fox v. Standard Oil Company of New Jersey, 294 U.S. 87, 55 S.Ct. 333, 338, 79 L.Ed. 780, used this significant language, in speaking of the power to tax: "When the power to tax exists, the extent of the burden is a matter for the discretion of the lawmakers." In that case the court quoted with approval from the case of A. Magnano Company v. Hamilton, supra, as follows: "Even if the tax should destroy a business it would not be made invalid or require compensation upon that ground alone. Those who enter upon a business take that risk." See Stewart Dry Goods Co. v. Lewis et al., 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054. It is true that the act in question levies a rather high rate of taxation, but that responsibility lies with Congress, and a court cannot strike it down for that reason. This rule was recognized in the case of Spencer v. Merchant, 125 U.S. 345, 8 S.Ct. 921, 926, 31 L.Ed. 763, wherein the court said: "In the words of Chief Justice Chase, condensing what had been said long before by Chief Justice Marshall: 'The judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the legislature is not to the courts, but to the people, by whom its members are elected.' Veazie Bank v. Fenno, 8 Wall. 533, 548 [19 L.Ed. 482]; McCulloch v. Maryland, 4 Wheat. 316, 428 [4 L. Ed. 579]; Providence Bank v. Billings, 4 Pet. 514, 563 [7 L.Ed. 939]. See, also, Kirtland v. Hotchkiss, 100 U.S. 491, 497 [25 L.Ed. 558]." Again, in the case of McCray v. United States, supra, the court said: "Since * * * the taxing power conferred by the Constitution knows no limits except those expressly stated in that instrument, it must follow, if a tax be within the lawful power, the exertion of that power may not be judicially restrained because of the results to arise from its exercise."

■ The act in question provides for a tax upon an income which is subject to a tax, and the rate, as fixed by such act, does not invalidate it. Thus, being a tax, it does not violate the due process of law clause of the Constitution. As was said by the Supreme Court, in the case of A. Magnano Company v. Hamilton, supra, "Except in rare and special instances, the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution. * * * That clause is applicable to a taxing statute such as the one here assailed only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property." It has been heretofore demonstrated that the property of complainant cannot be said to be confiscated by virtue of the levy and collection of the tax as provided in the challenged act. It is simply a levy and collection of an income tax under a law which Congress had the power to enact and to prescribe the per centum to be levied and collected.

■ Neither can it be said that the fact that the act is retroactive is sufficient for a court to hold that it is "arbitrary and is, therefore, invalid." Many revenue statutes, especially those providing for a tax on income, have been retroactive in effect, but have been sustained, nevertheless, by our courts. See Brushaber v. Union Pacific Railroad Company, supra; Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 145, 75 L.Ed. 397; Milliken et al. v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809. The rule sustaining the retroactive feature in statutes was announced in many early decisions. See Stockdale v. Atlantic Insurance Co., 20 Wall. 323, 22 L.Ed. 348, Fed.Cas.No.

13,462; Lake Shore & M. S. Railroad Co. v. Rose, 95 U.S. 78, 24 L.Ed. 376; Western Union Railroad Co. v. United States, 101 U.S. 543, 25 L.Ed. 1068.

The method of computing the amount of taxes to be levied under the provisions of the act in question is provided in the act. Section 501 (c), Title 3 (26 U.S.C.A. § 345 (c), provides that: "The net income from the sales specified in subsection (a) (1) shall be computed as follows: (1) From the gross income from such sales there shall be deducted the allocable portion of the deductions from gross income for the taxable year which are allowable under the applicable Revenue Act; or (2) If the taxpayer so elects by filing his return on such basis, the total net income for the taxable year from the sale of all articles with respect to which each Federal excise tax was imposed (computed by deducting from the gross income from such sales the allocable portion of the deductions from gross income which are allowable under the applicable Revenue Act, but without deduction of the amount of such Federal excise tax which was paid or of the amount of reimbursement to purchasers with respect to such Federal excise tax) shall be divided by the total quantity of such articles sold during the taxable year and the quotient shall be multiplied by the quantity of such articles involved in the sales specified in subsection (a) (1). Such quantities shall be expressed in terms of the unit on the basis of which the Federal excise tax was imposed. For the purposes of this section the proper apportionment and allocation of deductions with respect to gross income shall be determined under rules and regulations prescribed by the Commissioner with the approval of the Secretary." The definitions of "net income" and "gross income" are found in sections 21 and 22, respectively, of the act (26 U.S.C.A. §§ 21 and note, 22). Section 23 (26 U.S.C.A. § 23) lists the allowable deductions. Pursuant to the act, the Commissioner prescribed Regulations 95 for the carrying out of the provisions thereof, which were approved by the Secretary of the Treasury on the 10th day of August, 1936, and of which the court takes judicial notice. Caha v. United States, 152 U.S. 211, 14 S.Ct. 513, 38 L.Ed. 415. Article VII of the Regulations provides in detail the method of computing the "net income from sales of articles with respect to which a Federal excise tax was imposed but not

paid." These Regulations are valid "unless unreasonable or inconsistent with the statute." In speaking of Regulations made pursuant to express authority contained in a statute, the Supreme Court, in the case of Fawcus Machine Company v. United States, supra, said: "They are valid unless unreasonable or inconsistent with the statute. United States v. Grimaud, 220 U. S. 506, 517, 518, 31 S.Ct. 480, 55 L.Ed. 563; International Railway Company v. Davidson, 257 U.S. 506, 514, 42 S.Ct. 179, 66 L.Ed. 341. They constitute contemporaneous construction by those charged with the administration of the act, are for that reason entitled to respectful consideration, and will not be overruled, except for weighty reasons. United States v. Moore, 95 U.S. 760, 763, 24 L.Ed. 588; Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457." These Regulations were prescribed by the person charged with the administration of the act and are consequently entitled to respectful consideration. He is presumed to be familiar with the problems confronting taxing officials, and his experience in such matters is supposed to be of great assistance to him in prescribing the Regulations necessary to carry into effect the provisions of the act. In the case of Burnet, Commissioner, v. S. & L. Building Corporation, 288 U.S. 406, 53 S.Ct. 428, 430, 77 L.Ed. 861, the court used this language: "The Commissioner and Board of Tax Appeals have practical knowledge of the intricate details incident to tax problems, and their determination in circumstances like those under consideration here should be given effect when not clearly contrary to the will of Congress." See United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926. By a careful examination of the Regulations in the instant case, I am convinced that they are neither unreasonable nor inconsistent with the statute. They are such as will enable a taxpayer to determine his net income upon which the tax is to be computed. It would seem that complainant concedes this fact, because it charges in its bill, as a fact, that its "net income, as defined by said Act, from pork products sold by it on and before October 26, 1935, and made from its processing of hogs, as to which it did not pay said processing tax, was not less than $1,400,000.00 and its net income for the entire taxable year ending October 26, 1935, from the sale of pork products was not less than said sum. * * *" It is further charged in the bill that the de-

fendant is insisting and maintaining that complainant is liable, under the act, for a tax in excess of $900,000 for the year ending October 26, 1935. Certain credits or deductions are allowed by statute, one of which is a credit for the amount of any other federal income taxes and excess profit taxes applicable to the same income. Section 502 (26 U.S.C.A. § 345a). There seems to be no "weighty reasons," as required, for striking down or overruling the Regulations prescribed for the computation of such taxes.

The injunction will be denied and the bill dismissed for want of equity.